UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD CLARK,

                              Plaintiff,

                                                    3:15-CV-00025
v.                                                  (DNH/TWD)

CAROLYN W. COLVIN
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

LACHMAN & GORTON                      PETER A. GORTON, ESQ.
*Counsel for Plaintiff*
1500 E. Main St.
P.O. Box 89
Endicott, New York 13761

HON. RICHARD S. HARTUNIAN             TOMASINA DIGRIGOLI, ESQ.
United States Attorney for the        Special Assistant United States Attorney
Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Court House
Albany, New York 12207

OFFICE OF GENERAL COUNSEL             STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

This matter was referred to the undersigned for report and recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with General Order 18 of this Court which sets forth procedures to be followed when appealing a denial of Social Security Benefits.  Both parties have filed briefs.  Oral argument was not heard.  For the reasons discussed below, the Court recommends that the decision of the Commissioner be affirmed and the Complaint (Dkt. No. 1) be dismissed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on October 19, 1964.  (Administrative Transcript at 158.[1])  Plaintiff completed the ninth grade.  (T. at 476.)  He does not have a GED or any formal vocational training.  (T. at 477.)  Plaintiff reported past work as a mechanic, construction mechanic, tow truck operator, and heavy equipment operator.  (T. at 478, 480, 482.)  Plaintiff has not worked since 2010.  (T. at 477.)  Plaintiff alleges disability since August 5, 2010, due to injuries to his left arm, left shoulder, right knee, right hip, and back pain.  (T. at 151, 158, 183.)

On August 5, 2010, Plaintiff applied for disability insurance benefits and supplementary security income ("SSI").  (T. at 151-61.)  On October 8, 2010, both applications were initially denied.  (T. at 12.)  On October 28, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (T. at 12.)  On July 22, 2011, the hearing was adjourned, and on September 19, 2011, the hearing was held before ALJ Edward J. Pitts ("ALJ Pitts").  (T. at 12.)  On October 28, 2011, ALJ Pitts issued a decision finding that Plaintiff was not disabled.  (T. at 12.)  On October 23, 2012, ALJ Pitts' decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  (T. at 1-6.)  Plaintiff commenced a civil action in this Court on December 13, 2012, No. 3:12-cv-01826-LEK-DEP.

---

[1] The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.

On September 19, 2013, the District Court dismissed the action in favor of Plaintiff, and remanded the case to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g). (T. at 526-28.)  On April 23, 2014, the Appeals Council vacated the final decision, and remanded the case to an ALJ to obtain testimony from a vocational expert.  (T. at 529-33.)

On October 20, 2014, a supplemental hearing was held before ALJ Robert E. Gale.  (T. at 467-504.)  Plaintiff appeared in Binghamton, New York, and was represented by counsel.  (T. at 451.)  The ALJ presided over the hearing from Syracuse, New York.  (T. at 451.)  Linda Vause, an impartial vocational expert testified.  (T. at 451.)  On October 31, 2014, the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 448-61.)  The ALJ's decision became the final decision of the Commissioner on December 31, 2014, because Plaintiff did not file exceptions.  (T. at 449.)  Plaintiff timely commenced this action on January 9, 2015.  (Dkt. No. 1.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. § 405(A), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v.

Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of

working. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[2] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 30 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may

---

[2] On Lexis, this published opinion is separated into two documents.  The first is titled *Roat v. Barnhart*, 717 F.Supp.2d 241, 2010 U.S. Dist., LEXIS 55442 (N.D.N.. June 7, 2010).  It includes only the district judge's short decision adopting the magistrate judge's report and recommendation.  The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F.Supp.2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010).  It includes only the magistrate judge's report and recommendation.  Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

The ALJ determined that Plaintiff met the insured status requirements of the SSA through December 31, 2015.  (T. at 453.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of August 5, 2010.  *Id.*  At step two, the ALJ determined that Plaintiff had the following severe impairments: tendon repair of the left upper extremity in 2000, status post right knee patella fracture repair in 2001, and status post left lateral femoral condyle repair in 2001.[3]  (T. at 454.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. at 455.)

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with additional limitations.  *Id.*  Plaintiff could lift/carry and/or push/pull no more than ten pounds occasionally and less than ten pounds frequently; stand/walk two out of eight hours for one hour at a time without leaving the work station; and sit for six out of eight hours.  *Id.*  Plaintiff needed to avoid ropes, ladders, scaffolds or crawling.  *Id.*  Plaintiff could occasionally crouch and stoop.  *Id.* Plaintiff has no limitation using his right (dominant) upper extremity.  *Id.*  Plaintiff was not to lift above his chest using his left (non-dominant) upper extremity; he would only be able to

---

[3] Specifically, the ALJ noted that Plaintiff's past medical history is positive for tendon repair of his left upper extremity caught in a conveyor belt in April 2000, and fracture repairs of his right patella and left lateral femoral condyle caused by a tire rim incident in 2001.  (T. at 454.)

occasionally finger and feel with his left hand. *Id.* He should only rarely use his right foot for operation of foot controls but could use his left lower extremity with no limitations to operate foot controls. *Id.*

The ALJ noted that Plaintiff was forty-five years old, which is defined as a younger individual, on the alleged disability onset date. (T. at 458.) Plaintiff turned fifty years old on October 19, 2014, and therefore his age category changed to closely approaching advanced age. *Id.* At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a construction mechanic, automotive mechanic, tow truck operator, or heavy equipment operator. (T. at 458.) At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff had acquired work skills from past relevant work that were transferrable to other occupations with jobs existing in significant numbers in the national economy that Plaintiff could perform. (T. at 458.) Accordingly, the ALJ found that Plaintiff has not been under a disability within the meaning of the SSA since January 5, 2010. (T. at 460-61.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff argues that the RFC determination by the ALJ was not supported by substantial evidence because the ALJ did not discuss Plaintiff's treating physician's opinion and improperly weighed the opinions of the consultative examiners, and the credibility determination was incorrect. (Dkt. No. 12.) Plaintiff further argues that as of October 19, 2014, Plaintiff is disabled under Rule 201.10[4] of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"). (Dkt. No. 12 at 5-6.) Defendant argues that the ALJ's decision

---

[4] This Court reviewed the supplemental brief (Dkt. No. 15) submitted by Plaintiff on November 2, 2015, notifying the Court that Plaintiffs' brief (Dkt. No. 12) contained a typographical error wherein Rule 201.10 was incorrectly typed as Rule 201.01. (Dkt. No. 16.) It is obvious to the Court that Plaintiff transposed the numbers because Rule 201.01 applies to individuals of advanced age, defined as fifty-five or older. 20 C.F.R. § 201(d). Plaintiff will turn fifty-five in 2019. (T. at 151, 158.) Therefore, the Court will address Plaintiff's argument under Rule 201.10, which applies to individuals closely approaching advanced age. 20 C.F.R. § 201(g).

applied the correct legal standards and is supported by substantial evidence, and thus should be affirmed. (Dkt. No. 15.)

## V.    ANALYSIS

### A.    The RFC Determination

Plaintiff argues that the RFC was not supported by substantial evidence because the ALJ (1) failed to recognize, let alone assess, the opinion of Plaintiff's treating physician, William O'Neill, M.D., and (2) erred by affording the opinion of consultative examiner, Sandra Boehlert, M.D., "great weight" and the opinion of independent examining physician, Lawrence Wiesner, D.O., "less weight." (Dkt. No. 12 at 7-16.[5])  Plaintiff further argues that the ALJ's credibility determination was improper.  *Id*. at 17-20.  The Commissioner argues that the RFC is supported by substantial evidence.  (Dkt. No. 13.)

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule.  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 42 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. §§ 404.1546(c), 416.946(c).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental

---

[5]  Citation to page numbers in the parties' respective briefs (Dkt. Nos. 12 and 13) refer to the original page numbers in the brief rather than to the page numbers assigned by the Court's CM/ECF electronic filing system.

abilities, as well as the limiting effects of all impairments even those not deemed severe. 20 C.F.R. §§ 404.1454(a), 416.945(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(b), 416.969a(b). Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding the plaintiff's capacities are not sufficient." *Roat*, 717 F. Supp. 2d at 267 (citation omitted). "RFC is then used to determine the particular types of work a claimant may be able to perform." *Whittaker*, 717 F. Supp. 2d at 440.

**B.  Opinion Evidence**

Here, the ALJ found that Plaintiff retained the RFC to perform sedentary work, with additional limitations, such as he could only lift/carry and push/pull no more than ten pounds occasionally and less than ten pounds frequently; stand/walk two out of eight hours at a time without leaving the workstation; sit for six out of eight hours; he needed to avoid crawling, and climbing ropes, ladders, and scaffolds; he could occasionally crouch and stoop; he had no limitation using his right (dominant) upper extremity; he would only be able to occasionally finger and feel with the left hand; he should only rarely use his right foot for operation of foot controls, but could use his left lower extremity with no limits to operate foot controls.  (T. at 455.)

In making this determination, the ALJ considered all of Plaintiff's symptoms, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence based on the on the requirements of 20 C.F.R. §§ 404.1527 and 416.927, and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  (T. at 456.)  The ALJ stated that there were no opinions from any treating source in the file.  (T. at 457.)  The ALJ gave great weight to Dr. Boehlert's opinion, and less weight Dr. Wiesner's opinion.  *Id*.

1.  Dr. Boehlert

Dr. Boehlert examined Plaintiff on September 17, 2010.  (T. at 223-29.)  Plaintiff reported left arm and shoulder pain since 2000.  (T. at 223.)  Plaintiff also reported right knee, hip, and back pain since 2001.  *Id*.  He reported having surgery in 2002.  *Id*.  He reported pain with sitting or standing "too long" or walking "too long."  (T. at 223.)  At the time of the examination, Plaintiff reported living with his mother, and did not cook, clean, or wash the laundry.  (T. at 224.)  He did, however, take his mother shopping.  *Id*.  Plaintiff reported

showering, dressing, and socializing with friends.  *Id*.  Dr. Boehlert noted that Plaintiff walked

with a normal gait.  *Id*.  He could walk on his heels and toes without difficulty.  *Id*.  He could

squat fully.  *Id*.  His stance was normal.  *Id*.  He used no assistive devices.  *Id*.  He needed no

help changing for the examination or getting on or off of the examination table.  *Id*.  He was able

to rise from a chair without difficulty.  *Id*.

Upon examination, Plaintiff's cervical spine and lumbar spine showed full flexion,

extension, lateral flexion bilaterally, and full rotary movement bilaterally.  (T. at 225.)  Plaintiff's

lumbar spine was nontender.  *Id*.  The straight leg raising test was positive at 90 degrees from the

sitting position, but negative from the supine position at 90 degrees.  *Id*.  Plaintiff had full range

of motion in his shoulders, forearms, elbows, wrists, hips, knees, and ankles bilaterally.  *Id*.

There was no evident subluxations, contractures, ankyloses, or thickening.  *Id*.  Plaintiff's joints

were stable and nontender, with no redness, heat, swelling, or effusion.  *Id*.  Plaintiff's deep

tendon reflexes were physiologic and equal in the upper and lower extremities.  *Id*.  There was

no evidence of cyanosis, clubbing, or edema.  *Id*.  There was no significant varicosities or trophic

changes.  *Id*.  There was no evidence muscle atrophy.  *Id*.  The September 17, 2010, x-ray of

Plaintiff's left shoulder was negative.  (T. at 228.)  The September 17, 2010, lumbosacral spine

x-ray revealed disc space narrowing, spondylolisthesis, and spondylosis.  (T. at 227.)

Plaintiff reported slight decreased use of his wrist and finger joints after his 2001 surgery.

(T. at 223.)  He stated that he was unable to use a heavy screwdriver or heavy equipment in his

left hand and that his grip strength was decreased in his left hand.  *Id*.  Upon examination,

Plaintiff's right hand and finger dexterity were intact.  (T. at 225.)  Plaintiff's grip strength was

5/5 in the right hand, and 4/5 in the left hand with slight decreased dexterity and decreased range

of motion in the left wrist and fingers.  *Id*.  Plaintiff could not touch his left thumb to his ring

finger or to his fifth finger. *Id*. Dr. Boehlert noted that due to this "muscle flap," Plaintiff had decreased range of motion of his wrist and fingers. *Id*.

Dr. Boehlert opined that Plaintiff had mild to moderate limitations to heavy repetitive exertional activity with his [left][6] hand, mild limitation to heavy ambulation or heavy bending or twisting of the lumbar spine or repetitive squatting or heavy exertion in the standing position, and mild limitation to heave ambulation due to his first great toe amputation. (T. at 226.) Dr. Boehlert did not assess any other restrictions. *Id*. The ALJ assigned "great weight" to Dr. Boehlert's opinion because it was supported by clinical evidence and she was familiar with the SSA program requirements. (T. at 456-57.)

Plaintiff's testimony also supported the ALJ's finding. At the October 20, 2014, supplemental hearing, Plaintiff testified that he did not have full motion of his left wrist and fingers. (T. at 487.) However, Plaintiff testified that he could make a fist with his left hand and would be able to pick up a pot from the stove using his left hand. (T. 488.) Plaintiff testified that he has the ability to rotate his left wrist, and that he can turn his left thumb up, and left thumb down. *Id*. Plaintiff can lift a gallon of milk just using his left hand. *Id*. Plaintiff reported being able to tie his shoes, button his shirt, and use zippers. (T. at 491.) Plaintiff testified that the maximum he can lift, "without over doing it," would be twenty-five pounds. (T. at 490.)

Plaintiff reported being able to stand for approximately thirty minutes at one time, and can sit for thirty to sixty minutes at one time without needing to change his posture. (T. at 491.) Significantly, Plaintiff reported that he still lives with his mother, but that he now takes care of

---

[6] Dr. Boehlert's opinion references Plaintiff's right hand. (T. at 226.) Obviously, this is a typographical error as Dr. Boehlert diagnosed Plaintiff with "left hand decreased dexterity and decreased grip" and Plaintiff reported no pain or injuries to his right hand, and upon examination, Plaintiff' right grip strength was 5/5, and his hand and finger dexterity was intact. (Dkt. No. 223-26.)

her.  (T. at 473.)  In terms of his daily activities, Plaintiff testified that he does all of the laundry, dishes, cleaning, vacuuming, and preparing meals.[7]  (T. at 474.)

## 2. Dr. Wiesner

Dr. Wiesner examined Plaintiff on August 26, 2011.  (T. at 443.)  Dr. Wiesner reviewed Plaintiff's available medical records, which included the emergency room visits and surgeries, and follow-up care from 2000 to 2002.  (T. at 444.)  Dr. Wiesner also reviewed Dr. Boehlert's opinion.  *Id.*  Dr. Wiesner noted that Plaintiff had "significant weakness" to the left arm.  *Id.*  However, he noted that Plaintiff's left arm, "did well in terms of healing."  *Id.*  Plaintiff reported increased pain over his right knee and significant low back pain.  *Id.*

Dr. Wiesner noted that Plaintiff was alert, orientated, and in no significant distress.  (T. at 444.)  Upon examination, Plaintiff had full range of motion and full muscle strength in his right arm.  *Id.*  Plaintiff had restricted range of motion in his left arm.  *Id.*  Plaintiff's left elbow had full range of motion with no tenderness.  *Id.*  However, Plaintiff had difficulty making a full fist with his left hand.  *Id.*  Dr. Wiesner stated that Plaintiff had "significant weakness" with wrist extension, described as 2/5.  Dr. Wiesner noted that Plaintiff's left grip was significantly diminished compared to the right.  *Id.*  Plaintiff also had significant numbness over the area of the skin and muscle graphs.  *Id.*  Plaintiff had full range of motion, with no tenderness in his hips.  *Id.*  His left lower extremity had full range of motion.  *Id.*  His muscle strength in both lower extremities was 5/5.  *Id.*  Plaintiff's right knee had palpable crepitus and had tenderness through his arc of motion.  (T. at 445.)

Dr. Wiesner opined that Plaintiff was severely limited with the use of his left arm.  (T. at 445.)  He noted that the skin muscle flap and crush injury had left Plaintiff with significant

---

[7]  As discussed above, Plaintiff reported to Dr. Boehlert that he did not cook, clean or wash laundry.  At the September 19, 2011, hearing, Plaintiff testified that he did not cook, clean, or do laundry.  (T. at 55.)

weakness and lack of motion in the left arm. *Id*. He opined that Plaintiff was "moderately impaired" with the use of his right knee, and that it would be expected to increase in severity over a short period of time. *Id*. Dr. Wiesner opined that Plaintiff's right knee was "prone to degenerative changes as he has undergone partial patellectomy." *Id*. He stated that Plaintiff would require knee replacement surgery in the near future. *Id*.

Based upon this examination, Dr. Wiesner opined that Plaintiff would need to take multiple breaks during the day. *Id*. Plaintiff would miss more than four days of work per month. *Id*. He opined that Plaintiff would be unable to lift more than ten pounds in a repetitive nature. *Id*. Although Plaintiff was not taking prescription pain medicine, Dr. Wiesner opined that medication would cause concentration difficulty and difficulty working around machinery. *Id*. Finally, Dr. Wiesner opined that Plaintiff's ability to sustain a "work pace" was "significantly limited." *Id*.

Dr. Wiesner also completed a "Questionnaire" and opined as follows: Plaintiff would need more than one ten minute rest period per hour; he would be absent more than four times per month; can sit for less than six hours out of an eight our day and needs to alternate positions between sitting and standing; was not able to stand for two hours; and cannot safely lift more than ten pounds. (T. at 446-47.) Dr. Wiesner opined that Plaintiff medical conditions would have a mild effect on Plaintiff's concentration and severe ability to sustain work pace. (T. at 447.)

The ALJ assigned Dr. Wiesner's opinion "less weight," and afforded "no weight" to certain of Dr. Wiesner's opinions. (T. at 457.) For example, the ALJ assigned no weight to Dr. Wiesner's opinion that Plaintiff would have difficulty concentrating due to pain medication because Plaintiff testified that he took only over the counter medication for pain and that he

experienced no side effects from the medication. (T. at 445, 447, 457, 483-84.) The ALJ assigned no weight to Dr. Wiesner's opinion that Plaintiff was not able to stand for two hours in an eight hour day because Plaintiff testified that he could stand and walk for forty minutes at a time. (T. at 447, 457.) Further, on examination, Dr. Wiesner found full muscle strength in Plaintiff's lower extremities, no instability of his repaired right knee, and full range of motion of his left hip, knee, and ankle. (T. at 444.) Moreover, the ALJ assigned Dr. Wiesner's opinions less weight because his opinions were based on Plaintiff's subjective complaints of limitation and speculation as to potential limitations that could exist in the future. For example, although Dr. Wiesner did not review an x-ray of Plaintiff's right knee, he stated that Plaintiff was "prone to significant degenerative changes based on the injury described and the treatment employed." (T. at 445.) Dr. Wiesner further speculated that the severity of Plaintiff's knee was expected to increase, and that he would require knee replacement surgery in the future. (T. at 445.)

Here, the Court finds that the ALJ properly considered the medical evidence of record, and provided good reasons for assigning Dr. Boehlert's opinion great weight and Dr. Wiesner's opinion less weight. It is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon "adequate findings supported by evidence having rational probative force." *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (citing *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002)).

### 3.    Dr. O'Neill

Plaintiff argues that "the ALJ makes <u>no mention</u> of Dr. O'Neill or the limitations he imposed." (Dkt. No. 12 at 8) (emphasis in original). Plaintiff argues that the ALJ's failure to recognize Dr. O'Neill as a treating physician constitutes prejudicial error warranting remand. *Id*. The Court disagrees.

Notably, at step three of the sequential evaluation, the ALJ specifically references Dr. O'Neill's medical records, stating that Plaintiff's "past medical history is positive for tendon repair of his left upper extremity caught in a conveyor belt in April 2000 and fracture repairs of his right patella and left lateral femoral condyle caused by a tire rim incident in 2001." (T. at 454.) "The evidence reflects that notwithstanding, [Plaintiff] returned to work thereafter but limited himself to lifting not more than fifty pounds due to deficits in light/carrying with his left (non-dominant) upper extremity . . . ." (T. at 454.) Moreover, the ALJ found that the "medical records in evidence" fail to establish the presence of a chronic or permanent impairment causing disabling limitations. (T. at 457.) The ALJ also found that, "based upon the treatment records, which are extremely remote, the consultative examiner's evaluation, and the claimant's admitted activities of living, considered in the combination with his extensive work history after medical treatment for the impairments," Plaintiff retained the RFC for sedentary work with additional limitations. (T. at 458) (emphasis added).

In this case, the ALJ stated that "there are no opinions from any treating source in the file." (T. at 457.) The record evidence compels the conclusion that Dr. O'Neill is not Plaintiff's treating physician. Whether the treating physician rule is appropriately applied depends on "the nature of the ongoing physician-treatment relationship." *Arnone v. Brown*, 882 F.2d 34, 41 (2d Cir. 1989) (quoting *Schisler v. Bowen*, 851 F.2d 43, 45 (2d Cir. 1988)). The rationale for giving the opinion of a treating physician extra weight is based upon the unique position "resulting from the continuity of treatment he provides and the doctor/patient relationship he develops [that] place him in a unique position to make a complete and accurate diagnosis of his patient." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)). A physician who does not have an "ongoing treatment relationship" with a

plaintiff does not qualify as a treating physician. *See Patterson v. Astrue*, No. 5:11-CV-1143 (MAD/DEP), 2013 WL 638617, *8, 2013 U.S. Dist. LEXIS 196697, at * (N.D.N.Y. 2013); *see also* 20 C.F.R. §§ 404.1502, 416.902. Having had no contact with Plaintiff since 2002, there simply is no "ongoing physician-treatment relationship" between Plaintiff and Dr. O'Neill, and therefore, the ALJ was under no obligation to apply the treating physician rule to Dr. O'Neill's opinion.

Plaintiff also argues that Dr. O'Neill imposed a "permanent" restriction of avoiding "constant repetitive ulnar deviation of the left wrist" and "sustained crawling" that is not reflected in the RFC. (Dkt. No. 12 at 8.) Dr. O'Neill's October 23, 2002, "return to work capabilities" form indicated that Plaintiff could return to work, albeit with the following "permanent" restrictions: "(1) occasionally lifting maximum of fifty-five pounds with frequent lifting/carrying of up to forty pounds; (2) avoid constant repetitive ulnar deviation of left wrist; and (3) avoid sustained crawling due to wrist limitations, may occasionally crawl for limited duration." (T. at 311.) Significantly, Plaintiff returned to work, and worked for eight years until August 2010 as a mechanic, tow truck operator, and heavy equipment operator. (T. at 478, 480, 482.) Notably, Dr. O'Neill's October 23, 2002, encounter note indicates that Plaintiff was engaging in regular activity, doing well, and had full range of motion. (T. at 295.) The August 28, 2002, encounter note also stated that all wounds had healed, and that Plaintiff had "overall good function of wrist/hand." (T. at 297.)

In determining the RFC, the ALJ must make a decision based on all of the relevant evidence, including a claimant's medical record, statements by physicians, and a claimant's description of his limitations. *See* 20 C.F.R. § 416.945(a). Although an ALJ will consider medical opinions on a claimant's function, ultimately the ALJ is tasked with reaching an RFC

assessment based on the record as a whole. 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-6p, 1996 WL 374180, at *1-2 (SSA July 2, 1996). Significantly, the ALJ's RFC finding need not track any one medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole) (citing *Richardson*, 402 U.S. at 399) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")). Moreover, certain findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell,* 177 F.3d at 133; 20 C.F.R. § 416.927(d).

Based upon the above, the Court finds that the ALJ properly evaluated the medical evidence of record and that the RFC determination was supported by substantial evidence.

### C.    Credibility Evidence and the RFC Determination

In addition to reviewing the medical evidence in determining the RFC, the ALJ must review the credibility of the claimant. The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation and internal punctuation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. §§ 404.1529, 416.929; *Genier*, 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (SSA July 2, 1996). The ALJ is required to consider all of the evidence of record in making his credibility assessment. *Genier*, 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *2. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *See Grewen v. Colvin*, No. 1:11-CV-829, 2014 WL 1289575, at *4, 2014 U.S. Dist. LEXIS 41260, at *10 (N.D.N.Y. Mar. 27, 2014) (while a "claimant's subjective complaints are an important part of the RFC calculus . . . subjective symptomatology by itself cannot be the basis for a finding of disability . . . [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence." *Genier*, 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be

expected to produce the alleged symptoms); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record.").  This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  *Genier*, 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about his impairments, his restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings.  *Id.* (citation omitted).

A claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone."  SSR 96-7p, 1996 WL 374186, at *3.  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve pain or symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to pain symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

1.      Plaintiff's Credibility

After careful consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (T. at 456.)  However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limited effects of the alleged symptoms were not entirely credible.  *Id.*

Plaintiff argues that the ALJ's credibility finding was improper, and that the analysis "fails on multiple counts."  (Dkt. No. 12 at 17-20.)  However, the majority of Plaintiff's arguments are directed to the credibility analysis of ALJ Pitts, not the final decision of the Commissioner that is before this Court.  (*See* Dkt. No. 12 at 17-20.)  The Court agrees with the Commissioner that the ALJ's credibility finding was proper and supported by substantial evidence.  (Dkt. No. 13 at 11-13.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis*, 62 F. Supp. 2d at 651 (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *15 (S.D.N.Y. Mar. 2, 1999)); *Ferraris*, 728 F.2d at 587.  "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."  *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled).  "Further, whatever findings the ALJ makes must be consistent with the medical and

other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). The ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10, 2003 U.S. Dist. LEXIS 6988, at *30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999)); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 WL 430547, at *6, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

In this case, the ALJ applied the appropriate standards in assessing the credibility of Plaintiff's statement regarding the severity of his symptoms and limitations. (T. at 456-58.) In making his credibility assessment, the ALJ considered the entire case record, including the objective medical evidence, Plaintiff's statements, and other relevant evidence in the record. *See* SSR 96-7p, 1996 WL 374186, at *1 (SSA July 2, 1996).

Here, the ALJ noted that despite Plaintiff's complaints of pain and functional limitations based on injuries to his left arm that occurred in April 2000, and injuries to his right knee that he sustained in April 2001, Plaintiff returned to work and continued to perform medium to heavy exertion work until August 2010. (T. at 456.) The ALJ noted that irrespective of having any insurance, Plaintiff has sought no medical treatment after filing for benefits, which significantly

detracts from his credibility regarding the seriousness of medical issues. *Id.* Plaintiff argues that the ALJ improperly relied on the lapse in medical treatment, and claims that he did not seek medical treatment because he was uninsured and could not afford treatment. (Dkt. No. 12 at 17-18.) However, at the September 19, 2011, hearing, Plaintiff testified that he recently became aware of a free clinic and indicated that he intended to seek treatment. (T. at 64.) The record is devoid of any evidence that Plaintiff obtained any treatment for his back, left arm, or right knee between September 2011 and the supplemental hearing in October 2014.

The ALJ also noted that Plaintiff's complaints were inconsistent with his activities and lifestyle. (T. at 548.) Plaintiff testified at the October 20, 2014, hearing that he prepared meals, washed dishes, did laundry, vacuumed, took his mother to the grocery store, traveled by bus, planted flowers, and watched television. (T. at 224, 456, 473-74, 491, 548.)

Furthermore, the determination that Plaintiff could perform sedentary work with limitations, is consistent with the clinical findings and opinions of the record. Under certain circumstances a subjective experience of pain may support a finding of disability. *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (citing *Gallagher v. Schweiker*, 679 F.2d 82 (2d Cir. 1983)). This is not such a case. A claimant who alleges disability based on pain does not have to provide direct medical evidence confirming the extent of the pain, however there must be medical signs and laboratory findings that show that the claimant has a medical impairment which could reasonably be expected to produce the pain. *Id.*; 20 C.F.R. § 416.929.

Here, the lack of treatment and lack of medical signs and laboratory findings regarding his pain support the ALJ's determination of Plaintiff's credibility in that regard. At the October 20, 2014, hearing, Plaintiff testified that he does not use any assistive device, and that the last time he wore a knee brace was "about two years ago." (T. at 475.) Plaintiff testified that he

lived with his mother in a single-wide trailer, with three or four steps at the entrance. *Id.*

Plaintiff testified that experiences no side effects from over-the-counter pain medication. (T. at 483.) Plaintiff testified that he can make a fist with left hand, and can rotate his left wrist. (T. at 487-88.) Plaintiff can lift a gallon of milk with his left hand. (T. at 487.) Plaintiff testified that he would be able to occasionally lift and carry twenty-five pounds for approximately thirty or forty feet before needing to rest. (T. at 490.) Finally, Plaintiff testified that he can stand for thirty minutes at one time, and could sit thirty to sixty minutes at one time. *Id.* Plaintiff testified that he can tie his shoes, button his shirt, and can zipper a jacket. (T. at 491.)

The ALJ found that Plaintiff's allegations of disabling symptomatology were not credible to the degree alleged. (T. at 456.) The ALJ determines issues of credibility, and deference should be given to his judgment because he heard Plaintiff's testimony and observed his demeanor. *See Garrison v. Comm'r of Social Sec.*, No. 08-CV-1005, 2010 WL 2776978, at *5-7, 2010 U.S. Dist. LEXIS 70411 (N.D.N.Y. July 14, 2010). Based upon the above, the ALJ did not err in his assessment of Plaintiff's credibility. Accordingly, the Court finds that Plaintiff's RFC is based upon proper legal standards and is supported by substantial evidence.

### D.     Step Five Determination

Plaintiff also challenges the ALJ's step five determination. (Dkt. No. 12 at 5-6.) The Commissioner argues that the ALJ's step five determination was sufficiently supported by the vocational expert's testimony. For the following reasons, the Court finds that the ALJ did not err in his step five determination.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at step five to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*,

209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). An ALJ may make this determination either by applying the grids or by adducing testimony of a vocational expert. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014); *Heckler v. Campbell*, 461 U.S. 458, 462 (1983); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.

However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). A nonexertional limitation is one imposed by the claimant's impairments that affect his ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997)); 20 C.F.R. § 404.1569a(c)). A nonexertional impairment requiring the testimony of a vocational expert has more than a negligible impact on a claimant's ability to perform the full range of work. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (citing *Zabala*, 595 F.3d at 411). An impairment is not negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids).

The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6, 2004 U.S. Dist. LEXIS 5125, at *18 (N.D.N.Y. Mar. 22, 2004). Vocational expert testimony is useful only if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1984) (citation omitted). The ALJ is responsible for determining the claimant's capabilities based on all the evidence, and the hypothetical questions must present the full extent of the claimant's impairments to provide a sound basis for the vocational expert's testimony. *Colon*, 2004 WL 1144059, at *6, 2004 U.S. Dist. LEXIS 5125, at *18-19 (citations omitted). However, there must be "'substantial record evidence to support the assumption upon which the [vocational expert] based his opinion.'" *Id.* (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)).

After opining that Plaintiff could not do any of his past relevant work with his current limitations, the ALJ testified that a hypothetical person with Plaintiff's vocational background and limitations matching the ALJ's RFC findings could perform the jobs of maintenance scheduler, information clerk, and automotive claims clerk. (T. at 496-97, 500.) As previously determined herein, substantial evidence supports the findings that formed the basis of the hypothetical posed by the ALJ to the vocational expert. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and accurately reflect the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151

(citations and internal punctuation omitted).  Accordingly, the Court finds no fault with the ALJ's step five determination.

Plaintiff contends, however, that from October 19, 2014, the day he turned fifty, he is disabled pursuant to Rule 201.10 of the grids.  (Dkt. No. 12 at 5-6.)  The Court disagrees.  Based upon Plaintiff's age and education, Rule 201.10 would dictate finding Plaintiff disabled but only if his skills were nontransferable.  20 C.F.R. pt. 404, subpt. P, App. 2.  Here, the vocational expert opined that Plaintiff's work skills transferred to the sedentary level of exertion.  (T. at 497-500.)  Thus, Rule 201.11 dictates finding Plaintiff not disabled.  20 C.F.R. pt. 404, subpt. P, App. 2.

After carefully reviewing the entire record and for the reasons stated, the Commissioner's denial of benefits applied the correct legal standards and was based upon substantial evidence. 20 C.F.R. §§ 404.1520(g), 416.920(g).  Therefore, the Court recommends that the decision of the Commissioner be affirmed.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED**, Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be **DENIED**, Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED**, and the Complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated: March 4, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge